**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| FOOD KING, INC., | CIVIL ACTION NO. 04-1500 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| NORKUS ENTERPRISES, INC., et al., | |
| Defendants. | |

**COOPER, District Judge**

Plaintiff, Food King, Inc. ("Food King"), commenced this action against Foodtown, Inc. ("Foodtown") and several persons and entities related to Foodtown, including Victor Laracca ("Laracca"), Oliva Supermarkets, LLC ("Oliva"), and V&V, Inc. ("V&V"), alleging violations of the Lanham Act (count one), breach of fiduciary duty (count two), shareholder oppression (count three), intentional misrepresentation (count four), and tortious interference with prospective economic advantage (count five). (Dkt. entry no. 56, 2d Am. Compl.) Laracca, Oliva, and V&V ("Moving Defendants") move to dismiss Food King's tortious interference with prospective economic advantage claim (count five) insofar as asserted against them pursuant to Federal Rule of Civil Procedure ("Rule") 12(c). (Dkt. entry no. 95.) For the reasons stated herein, the Court will grant the motion.

**BACKGROUND**

**I.    The Relevant Parties**

Foodtown is a New Jersey corporation comprised of member grocery stores, including Food King and V&V.  (Moving Defs. Br., at 2-3.)  Each member store is also a Class A shareholder of Foodtown.  (Id. at 2.)  V&V is a New Jersey corporation that is owned and operated by Laracca, a Foodtown director.  (Id. at 3; 2d Amended Compl., at ¶ 18.)  Oliva is a New Jersey limited liability company that is also operated by Laracca.  (Moving Defs. Br., at 2.)

**II.   The Sale of the Cedar Knolls Supermarket**

Manyfoods, Inc. ("Manyfoods"), a Foodtown member store, filed a voluntary petition under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § ("Section") 101, et seq., ("Bankruptcy Code") on May 29, 2003.  (Id. at 3.)  In connection with the bankruptcy proceeding, Manyfoods sought to sell its store located in Cedar Knolls, New Jersey ("Cedar Knolls Store") as a going concern pursuant to Section 363 of the Bankruptcy Code.  (Id.)  Thus, Manyfoods solicited direct bids from major supermarkets, food cooperatives, and wholesalers in the Northeast region of the United States, including Food King.  (Id. at 4.)

Food King had attempted to purchase the Cedar Knolls Store on a previous occasion, and thus, was interested in this opportunity to acquire it.  (Pl. Br., at 3.)  Manyfoods's largest

creditor agreed to finance Food King's purchase of the Cedar Knolls Store, as well as all inventory and remodeling.  (Id. at 3-4.)  Nevertheless, Food King requested that Foodtown provide additional financial aid to assist with the purchase.  (Id. at 4.)  Food King performed considerable due diligence on the Cedar Knolls Store before informing Foodtown's board of directors of its interest in acquiring the store.  (Id. at 5.)

The Foodtown Executive Committee, which included Laracca, met and considered Food King's request for financial aid on December 16, 2003.  (Id. at 6.)  The Executive Committee "recommended that the Board approve the 'additional assistance that Food King has requested in an effort to save the store.'" (Id. (internal citations omitted).)  That same day, Food King addressed Foodtown's board of directors, including Laracca, and outlined the proposed terms of its offer to purchase the Cedar Knolls Store and the challenges it expected to encounter in "bringing the store up to standards".  (Id.)  Although Laracca spoke out against Foodtown providing any assistance or incentives to Food King, the board of directors unanimously approved a package of incentives that would assist Food King in successfully purchasing the Cedar Knolls Store.  (Id. at 7.)

Manyfoods, as a result of its bid solicitation, received an offer to purchase the Cedar Knolls Store from (1) Food King in the amount of $850,000 plus additional components tied to

3

inventory, and (2) Oliva in the amount of $825,000.  (Moving Defs. Br., at 5.)  Because Food King's offer was determined to be the highest and best, it was deemed the "stalking horse" bidder, and therefore, "was entitled to reimbursement of its actual expenses, in the liquidated amount of $50,000, if its bid was ultimately determined to not be the highest and best offer at the sale auction."  (Id.)  Further, Manyfoods entered into an asset purchase agreement with Food King.  (Pl. Br., at 8.)

Manyfoods moved in the United States Bankruptcy Court for the District of New Jersey ("Bankruptcy Court") for an order (1) approving its proposed bidding and sale procedures with respect to the Cedar Knolls Store, (2) approving the form of its sale notice and its proposed deadlines for objecting to the sale, (3) scheduling a hearing on the sale, and (4) authorizing it to sell the Cedar Knolls Store to Food King subject to any higher or better offers that might be submitted at the sale auction. (Moving Defs. Br., at 3-4.)  On January 16, 2004, the Bankruptcy Court entered an order approving Manyfoods's proposed bidding and sale procedures, scheduling the sale auction, and granting all other relief requested in the sale motion.  (Id. at 6.)  The sale auction was held on January 22, 2004.  (Id.)  After several rounds of bidding, Oliva's $1,026,000 offer to purchase the Cedar Knolls Store was determined to be the highest and best.  (Id.) Neither Food King nor any other party present at the sale auction raised any objections with respect to this determination.  (Id.)

4

Manyfoods submitted a proposed order to the Bankruptcy Court reflecting the terms of both Oliva's offer to purchase the Cedar Knolls Store and the corresponding asset purchase agreement, which the parties entered into following the sale auction.  (Id. at 7.)  No objections were filed to the proposed sale order.  (Id.)  Accordingly, the Bankruptcy Court entered an order on January 26, 2004 that, inter alia, approved Manyfoods's sale of the Cedar Knolls Store to Oliva ("Sale Order").  (Id.)  Neither Food King nor any other party appealed the Sale Order.  (Id.)

### III. **The Relevant Terms of the Sale Order**

The Sale Order states that:

> Good and sufficient notice of the Motion, the Sale Scheduling Order, the Bidding Procedures and the Sale Hearing has been given and no other or further notice is required.  A reasonable opportunity to object or be heard regarding the requested relief in the Motion has been afforded to all creditors of this Chapter 11 case and parties in interest.
>
> Oliva as maker of the Successful Bid, and Food King, as maker of the Next Highest Bid, each constitute a good faith purchaser in accordance with In re Abbott Dairies of Pennsylvania, Inc., 788 F.2d 143, 149-150 (3d Cir. 1986).
>
> The transactions contemplated by the Oliva Asset Purchase Agreement . . ., and all other agreements, documents and instruments contemplated in connection therewith are in good faith and satisfy the provisions of Bankruptcy Code §§ 363 and 365.

(Richards Cert., Ex. D, Sale Order, at ¶¶ C, F, & G.)  Further, in the Sale Order, the Bankruptcy Court ordered, inter alia, that:

> The final offer made by Oliva, as set forth on the record of the Auction and as incorporated in the Oliva Asset Purchase Agreement, shall be and hereby is deemed to be the Successful Bid.  The Oliva Asset Purchase Agreement and all of the terms and conditions thereof and transactions contemplated therein . . . are hereby approved.
>
> Pursuant to Bankruptcy Code §§ 105(a) and 363(f), the Cedar Knolls [Store] and the Acquired Assets shall be sold and transferred to [Oliva], and upon confirmation of the Oliva Asset Purchase Agreement (the "Closing"), such transfer shall be free and clear of all Liens (as hereinafter defined) of any kind or nature whatsoever, except to the extent specifically provided in the Oliva Asset Purchase Agreement.
>
> The Transfer of the Cedar Knolls [Store] to [Oliva] pursuant to the Oliva Asset Purchase Agreement shall constitute a legal, valid, and effective transfer of the Acquired Assets free and clear of all Liens of any kind or nature whatsoever.
>
> The Oliva Asset Purchase Agreement be authorized and approved in its entirety.

(Id. at ¶¶ 3, 7, 9, & 33.)

The Sale Order defines "Liens" as including, among other things, any and all security interests, encumbrances, claims, mortgages, deeds of trust, pledges, covenants, restrictions, contracts, rights of recovery, judgments, orders, debts, and causes of action to the fullest extent of the law.  (Id. at ¶ 7.) Moreover, the Sale Order bars, estops, and permanently enjoins all persons or entities "holding Liens of any kind or nature whatsoever . . . arising under or out of, in connection with, or in any way relating to [Manyfoods], the Acquired Assets, the operation of the Cedar Knolls [Store] prior to the Closing, or

6

the transfer of the Cedar Knolls [Store] to [Oliva]" from asserting such Liens against Oliva or its successors.  (Id. at ¶ 8.)  Thus, the Sale Order prohibits all persons from asserting any claims or causes of action relating to Manyfoods' transfer of the Cedar Knolls Store.

## DISCUSSION

### I.  Rule 12(c) Standard

Rule 12(c) allows any party to move for "judgment on the pleadings."  Fed.R.Civ.P. 12(c).  The difference between a motion pursuant to Rule 12(c) and a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is a matter of timing.  Specifically, motions brought pursuant to Rule 12(b)(6) must be filed before any responsive pleading, while motions brought pursuant to Rule 12(c) may be brought after a responsive pleading has been filed.  Fed.R.Civ.P. 12(b)(6), (c); Turbe v. Gov't. of V.I., 938 F.2d 427, 428 (3d Cir. 1991).  Nevertheless, Rule 12(h) provides that the defense of failure to state a claim may be raised in a motion for judgment on the pleadings.  Fed.R.Civ.P. 12(h)(2); Turbe, 938 F.2d at 428.  Thus, the Court must apply the same standards to a Rule 12(c) motion as would be applied to a Rule 12(b)(6) motion.  Turbe, 938 F.2d at 428.

A motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action, but merely tests the legal sufficiency of the complaint.  Sturm

v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987).  A court may grant a motion to dismiss a complaint under Rule 12(b)(6) or 12(c) "only if, accepting all alleged facts as true, the plaintiff is not entitled to relief."  Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986).

The Court, when considering such a motion, must accept as true all well-pleaded factual allegations in the complaint, and view them in the light most favorable to the plaintiff.  Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004); see also Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) ("We must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them.")  A court, however, need not credit "bald assertions" or "legal conclusions," and should not accept "unwarranted inferences" when deciding a motion to dismiss.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  "Dismissal of claims [on a motion to dismiss] is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim upon which relief may be granted."  Jakomas v. McFalls, 229 F.Supp.2d 412, 419 (W.D. Pa. 2002).

The Court, when confronted with a motion to dismiss, generally only considers the allegations in the complaint, exhibits attached to the complaint, and public records.  Beverly Enters., Inc. v. Trump, 182 F.3d 183, 190 n.3 (3d Cir. 1999).  We

8

generally cannot "consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997). We may, however, consider all documents that are "integral to or explicitly relied upon in the complaint." Id. (internal quotations and citation omitted).

**II. Analysis**

The Moving Defendants argue that Food King failed to timely appeal from the Sale Order, and thus, cannot "march in with unsubstantiated allegations of fraud in an attempt to retake property rights which it chose not to pursue in the proper forum a long time ago." (Moving Defs. Br., at 14.) The Moving Defendants further argue that allowing Food King to pursue its tortious interference with prospective economic advantage claim "would trample the provisions and finality of the Sale Order under Section 363" of the Bankruptcy Code. (Id.)

Food King, in contrast, asserts that the Bankruptcy Court proceedings are irrelevant here because it is Laracca and Oliva's conduct before the sale auction that is at issue. (Pl. Br., at 17.) Specifically, Food King contends that Laracca unlawfully traded on the information he received as a member of Foodtown's executive committee and board of directors, and thereby caused his company, Oliva, to make a higher bid for the Cedar Knolls Store. (Id. at 9.) Food King also contends that there is a longstanding Foodtown policy that prohibits one Foodtown member

9

store from seeking to acquire a supermarket that another Foodtown member store is pursing if that member "has advanced the acquisition process to the application stage." (Id. at 12.) Therefore, Food King asserts that its tortious interference with prospective economic advantage claim should not be dismissed because it can establish that it had a reasonable expectation of economic advantage that was lost as a direct result of the Moving Defendants' malicious interference with its attempt to purchase the Cedar Knolls Store. (Id. at 11-16.)

Section 363(b)(1) of the Bankruptcy Code permits a bankruptcy trustee or a debtor-in-possession, after notice and a hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 8002 states that a notice of appeal from a bankruptcy court order, including an order authorizing the sale of property of the bankruptcy estate pursuant to Section 363(b)(1), must be filed withing ten days of entry of such order. Fed.R.Bankr.P. 8002. Further, Section 363(m) provides that the

> reversal or modification on appeal of an authorization under [Section 363(b)] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith . . . unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). This is one of only two provisions in the

10

Bankruptcy Code that requires the stay of a bankruptcy court order pending appeal. Pitt. Food & Bev., Inc. v. Ranallo, 112 F.3d 645, 648 (3d Cir. 1997). Accordingly, failure to obtain a stay of a bankruptcy court's sale order renders any appeal of that sale order moot. Id. at 651. Thus, Section 363(m) reflects a policy of affording finality to both bankruptcy courts' decisions and those orders and judgments that are relied upon by third parties. In re Abbott Dairies of Pennsylvania, Inc., 788 F.2d 143, 147 (3d Cir. 1986).

The Bankruptcy Court here entered the Sale Order after all creditors and parties in interest were given sufficient notice and a reasonable opportunity to object to entry of the proposed order. (Richards Cert., Ex. D, Sale Order, at ¶ C.) Neither Food King nor any other party objected to the proposed order or filed a notice of appeal following its entry. (Moving Defs. Br., at 7.) Further, Food King did not move to stay the Sale Order under Section 363(m). The Sale Order was entered on January 26, 2004, and thus, Food King's time to appeal the Sale Order has expired. See Fed.R.Bankr.P. 8002. Therefore, this Court cannot consider any issues related to the Sale Order or contradict its terms in addressing Food King's claims against the Moving Defendants in this action. See Abrahams v. Kindred Healthcare Inc. (In re Vencor, Inc.), 98 Fed.Appx. 93, 96 (3d Cir. 2004) (noting that it did not have jurisdiction to consider bankruptcy

court's confirmation order because no appeal was taken from that order, and refusing to "allow Appellants to avoid the consequences of their failure by considering issues related to the confirmation order on appeal from an order disallowing proofs of claims").

The Sale Order, as discussed in more detail supra, states, inter alia, that Oliva is a good faith purchaser under Section 363(m). (Richards Cert., Ex. D, Sale Order, at ¶ F.) Moreover, the Sale Order (1) approved the terms and conditions of the asset purchase agreement between Oliva and Manyfoods, and (2) authorized the sale of the Cedar Knolls Store and all assets related thereto to Oliva. (Id. at ¶¶ 3 & 7.) The Sale Order provides that the Cedar Knolls Store was sold to Oliva "free and clear of all Liens . . . of any kind or nature whatsoever". (Id. at ¶ 7.) The Sale Order also bars any entity holding a Lien arising out of Manyfoods's sale of the Cedar Knolls Store from asserting such Lien. (Id. at ¶ 8.) The Bankruptcy Court defined "Liens" as including a long list of items such as causes of action and claims. (Id. at ¶ 7.) Thus, the Sale Order, which Food King did not appeal, clearly prohibits the assertion of any causes of action or claims related to or arising from Manyfoods's sale of the Cedar Knolls Store to Oliva, including but not limited to claims for damages. Therefore, Food King is precluded by the terms of the Sale Order from asserting any claims against

Oliva, and those allegedly acting in concert with it, arising from its purchase of the Cedar Knolls Store through the bankruptcy sale.

Food King cannot assert that the Moving Defendants' conduct was malicious, fraudulent, or a violation of its rights without also asking this Court to question the validity of the actual sale.  Such inquiry is precluded by the Sale Order.  Any causes of action or claims arising from Manyfoods' sale of the Cedar Knolls Store to Oliva should have been raised in the bankruptcy court or on appeal from the Sale Order.  Therefore, this Court finds that Food King's tortious interference with prospective economic advantage claim is barred by the terms of the Sale Order.

## CONCLUSION

The Court, for the reasons stated supra, will (1) grant the motion, and (2) dismiss Food King's tortious interference with prospective economic advantage claim (count five) insofar as asserted against the Moving Defendants.

 s/ Mary L. Cooper         
**MARY L. COOPER**
United States District Judge