**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
                                         :
FOOD KING, INC.,                         :   CIVIL ACTION NO. 04-1500 (MLC)
                                         :
      Plaintiff,                         :   MEMORANDUM OPINION
                                         :
      v.                                 :
                                         :
NORKUS ENTERPRISES, INC.,                :
et al.,                                  :
                                         :
      Defendants.                        :
                                         :
```

**COOPER, District Judge**

Plaintiff, Food King, Inc. ("Food King"), commenced this action against, among others, Foodtown, Inc. ("Foodtown"), the individual members of its board of directors, and certain of its shareholders, including Harp Marketing Corp. ("Harp"), alleging, inter alia, intentional misrepresentation (count four).  (Dkt. entry no. 56, 2d Am. Compl.)  Harp moves to dismiss the second amended complaint with respect to Food King's intentional misrepresentation claim (count four) against it pursuant to Federal Rule of Civil Procedure ("Rule") 12(c).  (Dkt. entry no. 103.)  For the reasons stated herein, the Court will grant the motion.

**BACKGROUND**

**I.    The Relevant Parties**

Foodtown is a New Jersey corporation comprised of member grocery stores located in New York and New Jersey.  (Harp Br., at 2.)  Food King, a New Jersey corporation, is a Class A

shareholder and member store of Foodtown.  (2d Am. Compl., at ¶ 1.)  Harp, a New York corporation, is also a Class A shareholder and member store of Foodtown.  (Harp Br., at 2.)

**II.   Harp's Network Outages Credit**

S&H Greenpoints ("S&H") provided Foodtown's member stores with a comprehensive loyalty marketing system that included hardware, software, and an integrated network connecting each store to S&H's computers in Florida.  (2d Am. Compl., at ¶ 11.)  In October 2001, Foodtown ran a "Free Thanksgiving Turkey" promotion that generated much customer interest.  (Id. at ¶ 14.)  Because transaction activity was very high across the S&H network during Thanksgiving week, the network experienced intermittent and sometimes lengthy outages.  (Id. at ¶ 15.)  As a result, many of the customers of Foodtown's member stores were unable to redeem their rewards or receive special discounts, and thus, these stores suffered a loss of good will.  (Id.)

Food King asserts that Harp received an approximately $75,000 credit to cover the losses it incurred as a result of the outages because it "insisted that it be reimbursed for damages its stores suffered."  (Id. at ¶ 16.)  Food King further asserts, upon information and belief, that S&H funded Harp's credit and did not require it to provide any documentation to substantiate its alleged losses.  (Id.)  Food King contends that "no other members were given any credit for similar losses, and the credit to Harp was supposed to be kept a secret."  (Id. at ¶ 17.)

2

**III. Harp's Advertising Credits**

Foodtown prints and distributes circulars and newspaper advertisements each week on behalf of its member stores. (Id. at ¶ 18.) In exchange, each member store pays Foodtown a weekly advertising fee, which varies in amount depending upon the number of actual stores that particular member owns. (Id. at ¶ 19.) However, a credit is given to stores that distribute their own newspaper advertisements and circulars. (Id. at ¶ 20.)

Food King alleges, upon information and belief, that Harp received "$30 per thousand credit based on their representation of their costs." Food King further alleges, upon information and belief, that the actual cost for Harp to distribute its advertising materials is $20 per thousand. (Id. at ¶ 22.) Food King contends that because Foodtown's advertising committee and audit committee refuse to provide an accounting, "the other members of Foodtown are subsidizing the advertising costs of . . . Harp through a unlawful reduction of monies available for patronage dividends." (Id. at ¶ 23.)

## DISCUSSION

**I.   Rule 12(c) Standard**

Rule 12(c) allows any party to move for "judgment on the pleadings." Fed.R.Civ.P. 12(c). The difference between a motion pursuant to Rule 12(c) and a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is a matter of timing.

3

Specifically, motions brought pursuant to Rule 12(b)(6) must be filed before any responsive pleading, while motions brought pursuant to Rule 12(c) may be brought after a responsive pleading has been filed. Fed.R.Civ.P. 12(b)(6), (c); Turbe v. Gov't. of V.I., 938 F.2d 427, 428 (3d Cir. 1991). Nevertheless, Rule 12(h) provides that the defense of failure to state a claim may be raised in a motion for judgment on the pleadings. Fed.R.Civ.P. 12(h)(2); Turbe, 938 F.2d at 428. Thus, the Court must apply the same standards to a Rule 12(c) motion as would be applied to a Rule 12(b)(6) motion. Turbe, 938 F.2d at 428.

A motion to dismiss for failure to state a claim upon which relief can be granted does not attack the merits of the action, but merely tests the legal sufficiency of the complaint. Sturm v. Clark, 835 F.2d 1009, 1011 (3d Cir. 1987). A court may grant a motion to dismiss a complaint under Rule 12(b)(6) or 12(c) "only if, accepting all alleged facts as true, the plaintiff is not entitled to relief." Bartholomew v. Fischl, 782 F.2d 1148, 1152 (3d Cir. 1986).

The Court, when considering such a motion, must accept as true all well-pleaded factual allegations in the complaint, and view them in the light most favorable to the plaintiff. Carino v. Stefan, 376 F.3d 156, 159 (3d Cir. 2004); see also Doe v. Delie, 257 F.3d 309, 313 (3d Cir. 2001) ("We must accept as true all of the factual allegations in the complaint as well as the

4

reasonable inferences that can be drawn from them.")  A court, however, need not credit "bald assertions" or "legal conclusions," and should not accept "unwarranted inferences" when deciding a motion to dismiss.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  "Dismissal of claims [on a motion to dismiss] is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim upon which relief may be granted."  Jakomas v. McFalls, 229 F.Supp.2d 412, 419 (W.D. Pa. 2002).

The Court, when confronted with a motion to dismiss, generally only considers the allegations in the complaint, exhibits attached to the complaint, and public records.  Beverly Enters., Inc. v. Trump, 182 F.3d 183, 190 n.3 (3d Cir. 1999).  We generally cannot "consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).  We may, however, consider all documents that are "integral to or explicitly relied upon in the complaint."  Id. (internal quotations and citation omitted).

**II. Analysis**

Food King requests that this Court, inter alia, order Harp to repay "Marketing for credits given for the self-distribution of circulars in excess of the actual cost to distribute" pursuant to N.J.S.A. § 14A:12-7.  (2d Am. Compl., at p.53.)  Harp, however, contends that Food King's claim against it should be

dismissed because Food King "has failed to plead a nexus between the alleged acts of Harp that would either target [Food King] as a shareholder or affect [its] stock interest." (Harp Br., at 5-6.) Harp also contends that Food King has not established that it occupies a position of control as a Foodtown shareholder. (Id. at 6.) Food King argues that this motion should be denied because Food King has specifically alleged "increased, unjust benefits to Harp without any corresponding benefit to Food King or other shareholders . . . and such benefits were provided secretly by, and in concert with, the Foodtown Board and its President and General Counsel." (Pl. Br., at 5-6.)

New Jersey corporations law permits a superior court to appoint a custodian or provisional director, order a sale of a corporation's stock, or enter a judgment dissolving a corporation if:

> In the case of a corporation having 25 or less shareholders, the directors or those in control have acted fraudulently or illegally, mismanaged the corporation, or abused their authority as officers or directors or have acted oppressively or unfairly toward
>
> one or more minority shareholders in their capacities as shareholders, directors, officers, or employees.

N.J.S.A. § 14A:12-7. This provision recognizes that shareholders in closely-held corporations are uniquely vulnerable, and thus, need special protection. Brenner v. Berkowitz, 634 A.2d 1019, 1027 (N.J. 1993). However, allegations of mere discord between shareholders are insufficient to invoke this provision. Id.

6

A minority shareholder must demonstrate more than fraudulent, illegal, or oppressive misconduct or abuse of authority to prevail under this statute. Id. at 1028. Instead, the minority shareholder must "demonstrate a nexus between that misconduct and the minority shareholder or her interest in the corporation." Id. (emphasis added). In determining whether such a nexus exists the Court must consider those acts that affect a shareholder's stock interest, as well as those acts that are specifically targeted to the shareholder. Id. at 1029. Therefore, "not all violations will cause a minority shareholder ascertainable harm", and thus, the Court must consider the seriousness of the alleged violations. Id.

Food King alleges that Harp violated N.J.S.A. § 14A:12-7(c) by accepting (1) a credit from S&H following the network outages in November 2001 when no other member stores were given such a credit for their losses, and (2) an inflated credit for distributing its own circulars and advertisements. (See 2d Am. Compl., at ¶¶ 16-17 & 23.) However, Food King has not alleged that Harp was either a director or "in control" of Food King as required by that statute. See N.J.S.A. § 14A:12-7(c). Food King also has not alleged that it or its stock interest was directly affected by Harp's alleged misconduct, or that Harp's actions were targeted at it. Further, Food King has not set forth any facts that would support such allegations. Thus, we conclude

7

that Food King has not adequately alleged that a nexus exists between Harp's alleged misconduct and some negative impact on Food King or its interest in Foodtown.  See Brenner, 634 A.2d at 1028.  Any negative effects that may have resulted from Harp's acceptance of the network outages credit and the advertising distribution credits have not been alleged to have been unique to Food King, but instead would have been felt by all of Foodtown's shareholders and member stores.  Therefore, accepting all facts asserted in the complaint as true, this Court finds that Food King has failed to allege a sufficient nexus between Harp's actions and any deprivation to Food King's reasonable expectations as a minority shareholder.  Accordingly, this Court will grant Harp's motion to dismiss Food King's intentional misrepresentation claim against it.

## CONCLUSION

The Court, for the reasons stated supra, will (1) grant the motion, and (2) dismiss Food King's intentional misrepresentation claim (count four) with respect to Harp.


      s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge